## Ward, et al. v. Ward.

(Decided June 12, 1913.)

## Appeal from Henderson Circuit Court.

1. Vendor and Purchaser—Lien For Purchase Money—Priority Over Mortgage Lien.—A lien retained in deed conveying land to secure unpaid balance of purchase money is superior to a mortgage lien of the same date.

2. Sureties—Indemnity—Mortgages—Pledges—Disposition of Proceeds.—Where a debtor executes to his surety a mortgage and also assigns policies of life insurance to him to indemnify him against loss by reason of his suretyship and to secure the payment of indebtedness then existing between him and his surety, the proceeds of the policies of insurance should be applied, first to the payment of the mortgage debt, and second, to the discharge of any indebtedness of the principal to the surety existing at the time of the assignment of the policies.

YEAMAN & YEAMAN for appellants.

MONTGOMERY MERRITT for appellee|

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

In May, 1902, Thomas E. Ward and his wife, S. Isabel Ward, purchased a house and lot in the town of Henderson for something like $2,000 and had the title conveyed to them jointly. They paid a part of the purchase money in cash and executed their purchase money notes for the remainder, amounting to $1,200. For this balance of the purchase money they signed two promissory notes, of which the Ohio Valley Banking & Trust Company became the purchaser. Upon the day upon which said property was purchased and conveyed to them, Thomas E. Ward borrowed from said bank $1,000 for which he gave two notes for $500 each. These notes were secured by the endorsement of his brother, E. C. Ward, and others. To secure the endorsers on these two notes for $500 each against loss on account of their suretyship, Thomas E. Ward and his wife S. Isabel Ward, executed to them, or to one of them for the benefit of all, a mortgage upon the same property. Thomas E. Ward and his wife moved into said property and used and occupied it as a home until his death in June, 1911. He had procured two policies of insurance on his life, one for $3,000 and another for $1,000. The $3,000 policy had been permitted to lapse and he had received from the

company a paid-up policy for $120. The $1,000 policy
was kept alive and in force from the time it was taken
out until his death. About three months after the $1,000
policy was taken out, he assigned and transferred it ab-
solutely to his brother, E. C. Ward, and at sometime be-
fore or after that date he also transferred to him ab-
solutely the policy for $120.

Following the death of Thomas E. Ward, his widow
called upon E. C. Ward, her brother-in-law, and notified
him that he must apply the proceeds of these insurance
policies to the payment of the two $500 notes of her
husband, which were held by the bank and upon which
he was surety. It appears that, at the time of the death
of Thomas E. Ward, he was indebted to E. C. Ward in
various sums, (some of which were evidenced by prom-
issory notes) amounting in the aggregate to more than
$1,400. Notwithstanding the request or demand made on
him by the widow as to the application of the insurance
money, E. C. Ward insisted upon his right to apply it
to the discharge of his other indebtedness, leaving the
two $500 notes unsatisfied. The widow brought suit
against him to compel him to make the application as
requested. He answered alleging the application in ac-
cordance with his expressed intentions to her and sought
to have the mortgage foreclosed and the property sold
to pay the two $500 notes upon which he was surety. The
bank was made a party. Proof was taken and upon final
submission, the chancellor was of opinion and held that
the defendant E. C. Ward had the right to make the ap-
plication as he did and directed the property sold to pay,
first, the two $500 notes, and second, the bank's note for
the purchase money. Both the widow and the bank ap-
peal.

It is not stated in the judgment the ground upon
which the court was influenced in holding that the lien to
secure the mortgage notes was superior to that of the
bank for the purchase money debt. This must have been
due to inadvertence in the preparation of the judgment.
The purchase money lien was superior to all other liens,
and the bank should have been given a superior lien upon
the entire property for the payment of its debt with ac-
crued interest.

From the evidence it is plain that, at the time the
assignment of these policies of insurance was made,
Thomas E. Ward was not indebted to his brother in any
sum in excess of $90, save on account of his suretyship

on the two $500 notes. It is not contended that the assignment was made other than for the purpose of securing E. C. Ward against loss on account of his suretyship for his brother. There is no evidence from which it could be even inferred that Thomas E. Ward, at that time, contemplated that he would become indebted to his brother, E. C. Ward, but, on the contrary, there is evidence tending to show that he took this insurance for the purpose of paying off his $1,000 debt to the bank upon which his brother was surety, so that, in the event of misfortune to him, a home might be left to his wife and children. In the absence of some express agreement showing that the assignment of these policies was made to enable Thomas E. Ward to secure, through his brother's endorsement, additional sums of money, we conclude that the assignment was made to secure his then existing indebtedness, and the trial court erred in not holding that the insurance money should be applied to the discharge of these mortgage notes.

But, it is insisted that, before the suit was brought, appellee had applied the insurance money to the discharge and satisfaction of his other indebtedness. He is in no position to shelter himself behind such defense. He knew, before he made such application, that his brother's family were claiming that he had no right to make such application, and his rush to do so could not put him in any better position than before he attempted to so apply the money. This is not a case where a payment was made without directions concerning its application. No payment of these policies could have been made during the life of Thomas E. Ward, and when he died and E. C. Ward collected the insurance money he was bound to apply it in satisfaction of that debt to secure which the policies were pledged—and this was the mortgage debt and perhaps another debt of $90. The court should have required that this insurance money be applied first, to the discharge of the two $500 notes secured by mortgage, and second, to the discharge of any other indebtedness on the part of Thomas E. Ward to E. C. Ward existing at the time the assignment of the policies was made.

Since the proper application of the insurance money will discharge the mortgage debt, the court will set aside the former judgment and enter one directing a sale of the property for the satisfaction of the bank's purchase money notes. When these are satisfied, one-half of the

balance realized by the sale belongs to the widow in her own right and in the remaining one-half she is entitled to a homestead.

Judgment reversed and cause remanded for further proceedings consistent herewith.